DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**PHOENIX MOTOR COMPANY,**
Appellant,

v.

**DESERT DIAMOND PLAYERS CLUB, INC.,**
Appellee.

No. 4D13-4422

[ August 20, 2014 ]


Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mily Rodriguez-Powell, Judge; L.T. Case No. CACE13-012525.

Marc E. Brandes of Kurkin Brandes LLP, Aventura, for appellant.

Robert P. Bissonnette of Robert P. Bissonnette, P.A., Fort Lauderdale, for appellee.

TAYLOR, J.

Phoenix Motor Company ("Phoenix Motor") appeals a non-final order denying its motion to compel arbitration in its dispute with Desert Diamond Players Club, Inc. ("Desert") over the export of purchased cars. Because we conclude that the arbitration agreement in the purchase agreements applies to the export policy dispute, we reverse.

Desert entered into four agreements for the purchase of new motor vehicles from Phoenix Motor. The purchase agreements contained an arbitration clause which provided in pertinent part:

> Seller and Purchaser hereby agree that the parties shall attempt to settle disputes arising out of or relating to this agreement or breach thereof by meeting of a designated representative of Seller and Purchaser . . . . If such dispute cannot be settled at this meeting, the parties shall choose a mediator from the American Arbitration Association ("AAA")

to mediate the dispute. If the matter is not then settled in a manner satisfactory [to] the parties at such mediation, either party may submit the dispute to binding arbitration by a sole arbitrator from the AAA in accordance with the AAA's Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. . . . The procedures specified herein shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this Agreement . . . .

The purchase agreements also stated that "[t]he Purchaser, before or at the time of delivery of the motor vehicle covered by the Order, shall execute such other forms of agreement or documents as may be required by the terms and conditions of payment indicated on the front of this Order."

Desert also signed an export policy for each vehicle it purchased. The export policy stated that Phoenix Motor would impose liquidated damages on Desert if Desert exported the new vehicle outside the United States sales territory within one year of purchase. The policy stated that "[e]xecution of the purchase/lease documents by the purchaser/lessee shall constitute acceptance of these terms and conditions."

When Desert executed a purchase agreement and submitted payment for a fifth vehicle, Phoenix Motor deducted liquidated damages from the payment, claiming that Desert exported the previous four vehicles in violation of the export policy. Desert brought an action for declaratory relief to determine that the export policy was invalid and unenforceable. Pursuant to the arbitration clause in the purchase agreements, Phoenix Motor filed a motion to compel arbitration. The trial court denied Phoenix Motor's motion and Phoenix appealed.

Phoenix Motor argues that the arbitration agreement in the purchase agreement applies to the export policy because both agreements arise out of the same transaction. Desert responds that the export policy does not contain an arbitration agreement and the export policy makes no references to the arbitration clause in the purchase agreement.

When a trial court denies a motion to compel arbitration, its factual findings are reviewed under a competent, substantial evidence standard, and its legal conclusions regarding the construction and validity of an arbitration agreement are reviewed de novo. *BKD Twenty-One Mgmt. Co. v. Delsordo,* 127 So. 3d 527, 529-30 (Fla. 4th DCA 2012).

2

"In ruling on a motion to compel arbitration of a dispute, the court must consider three issues: '(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.'" *O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So. 2d 181, 185 (Fla. 2006). The only factor at issue in this case is whether there was a valid agreement to arbitrate a dispute arising from the export policy. When deciding if the parties agreed to arbitrate a matter, courts generally apply state law principles that govern the formation of contracts. *Sitarik v. JFK Med. Ctr. Ltd. Partnerships (JFK)*, 7 So. 3d 576, 578 (Fla. 4th DCA 2009).

"Where two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together." *Collins v. Citrus Nat'l Bank*, 641 So. 2d 458, 459 (Fla. 5th DCA 1994); *see also KRC Enters., Inc. v. Soderquist*, 553 So. 2d 760, 761 (Fla. 2d DCA 1989). But if the parties execute "two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration." *Lee v. All Fla. Constr. Co.*, 662 So. 2d 365, 366 (Fla. 3d DCA 1995) (holding that a homeowner could not arbitrate a dispute over a home repair contract, which did not have an arbitration clause, on the grounds that another contract for a home addition with the same contractor contained an arbitration clause). "Arbitration provisions from one contract cannot be extended to a separate contract between the same parties unless the parties expressly agree to do so." *Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc.*, 484 So. 2d 610, 611 (Fla. 5th DCA 1986) (holding that the arbitration agreement in a written contract did not apply to a dispute arising from a subsequent oral agreement, which did not incorporate the arbitration clause from the written contract).

For a contract's arbitration clause to extend to another document, the contract must expressly refer to the document or sufficiently describe the document so that the document could be interpreted as part of the contract. *Affinity Internet, Inc. v. Consol. Credit Counseling Services, Inc.*, 920 So. 2d 1286, 1288-89 (Fla. 4th DCA 2006) (citations omitted) (holding that a contract does not incorporate the arbitration clause of the company's user agreement when that user agreement was neither expressly referred to nor sufficiently described in the contract). In other words,

> the doctrine [of incorporation by reference] requires that there must be some expression in the incorporating document . . . of an intention to be bound by the collateral

3

> document . . . . A mere reference to another document is not
> sufficient to incorporate that other document into a contract,
> particularly where the incorporating document makes no
> specific reference that it is 'subject to' the collateral
> document.

*Temple Emanu-El of Greater Fort Lauderdale v. Tremarco Indus., Inc.*, 705 So. 2d 983, 984 (Fla. 4th DCA 1998) (alterations in original) (citations omitted).

In *Morse Operations, Inc. v. Sonar Radio Corp.*, 449 So. 2d 1002 (Fla. 4th DCA 1984), a dealer and a purchaser executed a buyer's order and a finance agreement for the sale of a car. After experiencing problems with the car, the purchaser brought an action against the dealer under the buyer's order. The buyer's order contained an arbitration agreement and a provision that stated "[t]he Purchaser, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment indicated on the front of this Order." *Id.* at 1003. The buyer's order also stated that the "Purchaser agrees that this Order on the face and reverse side hereof and any separate credit disclosure shall include all of the terms and conditions . . . ." *Id.* We held that the buyer's order, which required the parties to submit to arbitration, controlled the entire transaction, because the plain language of the order demonstrated that the parties contemplated executing additional documents when the order was signed. *Id.*

Similarly, in *Passerrello v. Robert L. Lipton, Inc.*, 690 So. 2d 610 (Fla. 4th DCA 1997), a purchaser sued a dealership alleging statutory false advertising and joined the bank that financed the transaction as a defendant. The financing contract and the purchase agreement were executed at the same time and then the financing contract was assigned to the bank. The financing contract provided that the bank was "subject to all claims and defenses" which the purchaser could assert against the dealer. *Id.* at 611. Although the purchase agreement contained an arbitration clause and the financing contract did not, we held that the purchaser was required to arbitrate with the bank as well as the dealership. *Id.*

This case is similar to both *Passerrello* and *Morse*. Each case concerns a purchase agreement and collateral documents executed as part of the same transaction. Similar to the clause in *Morse*, the purchase agreements in this case provide that "[t]he Purchaser, before or at the time of delivery of the motor vehicle covered by the Order, shall execute such

other forms of agreement or documents as may be required by the terms and conditions of payment indicated on the front of this Order." This clause demonstrates that the parties contemplated executing additional documents when they signed the purchase agreements. Moreover, the export policy reads in pertinent part that the "[e]xecution of the purchase/lease documents by the purchaser/lessee shall constitute acceptance of these terms and conditions." When the two clauses are read together, they indicate the parties' intent for the purchase agreement and the export policy to be part of the same contract. Since the purchase agreements further state that "[t]he procedures specified herein shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this Agreement," we find the purchase agreements to be the controlling documents and the arbitration clause to apply to disputes arising from the export policy.

For the reasons stated, we reverse the trial court's order denying the motion to compel arbitration and remand for further proceedings.

*Reversed and Remanded.*

CONNER, J., and PEREZ, GLADYS, Associate Judge, concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**