IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

MASSAGE ENVY FRANCHISING, LLC,

     Appellant,

 v.

Case No. 5D20-1794
LT Case No. 2019-CA-13886

JANE DOE, MEWG, LLC D/B/A
MASSAGE ENVY AND LEN
STUART OLAH,

     Appellees.

_____/

Opinion filed May 27, 2022

Nonfinal Appeal from the Circuit Court
for Orange County,
John M. Kest, Judge.

Diane G. DeWolf, of Akerman LLP,
Tallahassee, and Sara A. Brubaker, of
Akerman LLP, Orlando, and Robert Atkins,
of Paul, Weiss, Rifkind, Wharton & Garrison
LLP, New York, New York, Pro Hac Vice for
Appellant

Thomas J. Seider, of Brannock Humphries
& Berman, Tampa, and Joseph G. Alvarez,
of Alvarez Injury Law, PLLC, Tampa, for
Appellee, Jane Doe.

No appearance for Other Appellees.

HARRIS, J.

Massage Envy Franchising, LLC ("Massage Envy") appeals the trial court's Order Denying its Motion to Stay Litigation and Compel Arbitration, arguing that a valid agreement to arbitrate exists between it and Appellee, Jane Doe. We agree that the trial court erred in concluding that no valid agreement to arbitrate exists and reverse.

In early 2018, Doe visited a Massage Envy franchise located in Winter Garden, Florida ("MEWG"), for the purpose of obtaining a massage. A few months after her appointment Doe filed a multi-count complaint against Massage Envy, MEWG, and her massage therapist, Len Stuart Olah, claiming that Olah sexually assaulted her during her massage at MEWG. Massage Envy responded to the complaint by filing a motion to stay litigation and to compel arbitration, alleging that Doe entered into a binding contract in which she agreed to submit all disputes against Massage Envy to an arbitrator rather than to a court.

The facts involved in this appeal are not in dispute. On the day Doe checked in for her massage appointment, MEWG provided her with an electronic tablet that contained an application through which Doe completed various intake forms. These forms included a section called "My Consent"

2

which in turn contained a sub-heading labeled "General Consent." At the end of the General Consent section was a checkbox next to the statement "I agree and assent to the <u>Terms of Use Agreement</u>."

The phrase "Terms of Use Agreement" was underlined and in a contrasting font color, characteristic of a hyperlink. This hyperlink, when clicked, displayed a sixteen-page Terms of Use Agreement ("TOU") in a scroll box, thus providing Doe with the opportunity to read the agreement in full before clicking her assent to the TOU. At the top of the TOU is a notice printed in bold, all capital letters, clearly and conspicuously stating that the agreement contains a binding arbitration provision. We find that the format of the agreement and the language utilized sufficiently described and referenced the TOU in a way that the intent of the parties to enter into the agreement, including that they would arbitrate any disputes, can be ascertained, and we disagree with the trial court's contrary conclusion.

Furthermore, it is uncontroverted that Doe completed the intake forms and that in order to do so, the checkbox agreeing to the TOU had to be clicked. In fact, Doe does not dispute that she clicked the box without first clicking the hyperlink. She argues that she was not on notice that, by clicking the box, she was actually agreeing to the TOU, with the arbitration provision,

3

rather than the "My Consent" forms that preceded the TOU reference. We find Doe's argument unpersuasive.

When ruling on a motion to compel arbitration a court must consider three elements: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). Only the first element is at issue in this appeal.

Because arbitration agreements are contracts, ordinary state law principles of contract formation apply. Phx. Motor Co. v. Desert Diamond Players Club, Inc., 144 So. 3d 694, 696 (Fla. 4th DCA 2014). The parties disagree as to the proper law to apply in enforcing the arbitration provision. Massage Envy argues that Arizona law applies, pursuant to the terms of the Governing Law and Jurisdiction provision of the TOU agreement, while Doe argues that Florida law applies in first determining whether a valid contract exists because the agreement was formed in Florida. Applying the law of either jurisdiction compels the same outcome. In both Arizona and Florida, a contract cannot be formed without the parties' mutual assent to the essential terms of the agreement. See also Muchesko v. Muchesko, 955 P.2d 21, 24 (Ariz. Ct. App. 1997). While arbitration provisions are generally favored by

the courts, "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." Seifert, 750 So. 2d at 636.

With respect to online or electronic contracts, such as the one here, there are at least two types of agreements: browsewrap and clickwrap. Vitacost.com, Inc. v. McCants, 210 So. 3d 761, 762 (Fla. 4th DCA 2017). A browsewrap agreement occurs when a website provides a link to the terms and conditions and does not require the user to click an acknowledgement during the checkout process. Id. The user may complete the transaction without visiting the page containing the terms and conditions. Id. Browsewrap agreements are only enforced when the hyperlink to the terms and conditions is "conspicuous enough to put a reasonably prudent person on inquiry notice." Id.

Conversely, a clickwrap agreement occurs when a website directs a purchaser or user to the terms and conditions of the sale and requires the user to click a box to acknowledge that they have read those terms and conditions. See id. These agreements are generally enforceable. Id.

Here, as Doe properly concedes, the agreement was a clickwrap agreement because she was required to click a box stating, "I agree and assent to the Terms of Use Agreement," which attached the TOU via hyperlink. As previously indicated, had Doe clicked on the hyperlink, she

would have been immediately directed to the TOU, which placed her on conspicuous notice on its first page of the provision binding her to arbitrate any disputes with Massage Envy. See MetroPCS Commc'ns v. Porter, 273 So. 3d 1025 (Fla. 3d DCA 2018) (concluding that providing hyperlink to terms and conditions at end of short text messages to customer was sufficient to put customer on inquiry notice of arbitration provision contained in terms and conditions). Doe's failure to read the TOU is of no consequence. See Sapp v. Warner, 141 So. 124, 127 (Fla. 1932) ("[A] person has no right to shut his eyes or ears to avoid information and then say that he has no notice.").

Accordingly, because the TOU immediately followed the "My Consent" forms, was attached via hyperlink, and Doe was directed to give her assent to the TOU by checking the "I agree" box, we conclude that Doe was put on sufficient notice of its terms and conditions, including the binding arbitration condition, and that she manifested her assent to those terms and conditions by affirmatively clicking the box where indicated, thus creating a valid agreement. We therefore reverse the order denying Massage Envy's Motion to Stay Litigation and to Compel Arbitration and remand this matter to the trial court with instructions to grant that motion.

REVERSED and REMANDED, with instructions.

LAMBERT, C.J., and TRAVER, J., concur.

6